UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE STATE OF TEXAS,<br>　*Plaintiff*,<br><br>v.<br><br>MIGUEL CARDONA, in his official capacity as Secretary of Education; United States Department of Education; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; and UNITED STATES DEPARTMENT OF JUSTICE,<br>　*Defendants*. | No. _:23-cv-_____ |

# COMPLAINT

1. On June 22, 2021, the United States Department of Education published a Notice of Interpretation of Title IX of the Education Amendments of 1972 in contravention of procedural requirements, judicial precedent, the statutory text, and implementing regulations. *See* Exh. A, Enforcement of Title IX of the Education Amendments of 1972 with Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of *Bostock v. Clayton County*, 86 Fed. Reg. 32,637 (June 22, 2021).

2. The Department's Notice expands Title IX's prohibition against discrimination "on the basis of sex," 20 U.S.C. § 1681(a), to incorporate discrimination based on sexual orientation and discrimination based on gender identity. *See* 86 Fed. Reg. 32,637–01. In so doing, the Notice disregards the text of Title IX, which explicitly allows covered educational institutions to maintain separate living facilities in accordance with biological sex. *See* 20 U.S.C. § 1686.

3. The Department's interpretation of Title IX seeks to radically transform educational institutions: "equating 'sex' with 'gender identity' or 'transgender status' for purposes of Title IX, would, at the very least, generally impact living facilities, locker rooms, and showers, in addition to bathrooms, at schools across the country—affecting students in kindergarten through the post-graduate level," and "would also call into question the validity of sex-separated sports teams." *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 816–17 (11th Cir. 2022) (en banc).

4. The Department asserts that the United States Supreme Court's ruling in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), compels its misinterpretation of Title IX. But that opinion held merely that it is discrimination "because of sex" under Title VII of the Civil Rights Act of 1964 for an employer to fire an employee "simply for being homosexual or transgender." *Id.* at 1737–40 (citing 20 U.S.C. § 2000e-2(a)(1)). Furthermore, the Court explicitly noted that its decision was limited to Title VII and did not address other federal or state laws that prohibit sex discrimination. *Id.* at 1753.

5. The Department doubled down on its misinterpretation of the law by issuing a guidance document in the form of a Dear Educator Letter that asserts that the reasoning of *Bostock* applies "regardless of whether the individual is an adult in a workplace or a student in school." *See* Exh. B, Dear Educator Letter, U.S. Dept. of Educ., Office for Civil Rights (June 23, 2021).

6. The Department of Education and the Department of Justice issued a guidance document in the form of a Fact Sheet accompanying the Letter that likewise ignores the text of Title IX and the Supreme Court's language in *Bostock*. For example, the Fact Sheet states that the Educational Opportunities Section of the Civil Rights Division at the Department of Justice and the Office for Civil Rights at the Department of Education will investigate if a school requires a transgender student to use the restroom in accordance with the student's biological sex, if a

school requires a transgender student to try out for an athletic team in accordance with the student's biological sex, or if a transgender student's classmates fail to refer to the student by the student's chosen pronouns. *See* Exh. C, Fact Sheet, Confronting Anti-LGBTQI+ Harassment in Schools (June 23, 2021).

7. The Notice, Letter, and Fact Sheet are unlawful under the Administrative Procedure Act and should be set aside. They are final agency actions reviewable under the APA, *see* 5 U.S.C. § 701(a), and the Department is an agency under that statute. *Id.* § 701(b).

8. They are inconsistent with the plain language of Title IX, its implementing regulations, and with the Supreme Court's ruling in *Bostock*. They were issued without an opportunity for notice and comment. They cause the State irreparable harm and Defendants should be enjoined from enforcing or relying on the Notice, Letter, and Fact Sheet.

## PARTIES

9. Plaintiff Texas is a sovereign State of the United States. *See* Tex. Const. art. I, § 1. Texas administers numerous education programs and operates thousands of educational institutions through its constituent agencies and political subdivisions, including programs and institutions that receive federal funding and are subject to Title IX. For example, in fiscal year 2022, the Texas Education Agency received approximately $3.9 billion in federal funding for elementary and secondary level education programs. Public postsecondary education institutions in Texas received approximately $2.5 billion in federal funding during fiscal 2022.

10. Defendant Miguel Cardona is the Secretary of Education. He is sued in his official capacity.

11. Defendant United States Department of Education is a cabinet-level federal executive agency. It is responsible for administering most federal assistance to education; it administers and enforces Title IX.

12. Defendant Merrick B. Garland is the Attorney General of the United States. He is sued in his official capacity.

13. Defendant United States Department of Justice is a cabinet-level federal executive agency. It is empowered to enforce Title IX. *See* Exec. Order No. 12250, Leadership and Coordination of Nondiscrimination Laws, 45 Fed. Reg. 72,995 (Nov. 2, 1980); 28 C.F.R. § 41.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this suit concerns the legality of actions taken by federal agencies and by federal officers in their official capacities.

15. Venue lies in this district under 28 U.S.C. § 1391(e)(1) because the defendants are agencies of the United States and officers of the United States in their official capacities; Texas resides in this district; and a substantial part of the events or omissions giving rise to Texas's claims arose in this district.

16. This Court is authorized to award the requested vacation, declaratory, and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706; 28 U.S.C § 1361; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; Federal Rules of Civil Procedure 57 and 65; and the general legal and equitable powers of the Court.

## BACKGROUND

**I. Defendants' Notice, Letter, and Fact Sheet and Their Flawed Legal Foundations**

### A. The June 22 Notice

17. On June 22, 2021, the Department published the Notice in the Federal Register. Exh. A at 32,637. The Notice became effective on that same day and did not provide an opportunity for comment. *Id.*

18. The Department admitted that its Office for Civil Rights "at times has stated that Title IX's prohibition on sex discrimination does not encompass discrimination based on sexual orientation and gender identity." *Id.* As recently as January 8, 2021, the Department published a memorandum in which it determined that *Bostock* was inapplicable to Title IX and did not require the Department to interpret Title IX in a manner inconsistent with its longstanding implementing regulations.[1]

19. The June 22 Notice effects a change in the Department's longstanding position and concludes that "the Department interprets Title IX's prohibition on discrimination 'on the basis of sex' to encompass discrimination on the basis of sexual orientation and gender identity." Exh. A at 32,637.

20. The Notice announced that the Department changed its position to be "[c]onsistent with the Supreme Court's ruling and analysis in *Bostock*" and cites *Bostock* frequently. *See id.* at 32,637–38.

21. The Department "determined that the interpretation of sex discrimination set out by the Supreme Court—that discrimination 'because of …

---

[1] *See* U.S. Dept. of Educ., Mem. for Kimberly M. Richey Acting Assistant Secretary of the Office for Civil Rights Re: *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) (Jan. 8, 2021), available at https://www2.ed.gov/about/offices/list/ocr/correspondence/other/ogc-memorandum-01082021.pdf (accessed June 14, 2023).

sex' encompasses discrimination based on sexual orientation and gender identity—properly guides the Department's interpretation of discrimination 'on the basis of sex' under Title IX and leads to the conclusions that Title IX prohibits discrimination based on sexual orientation and gender identity." *Id*. at 32,638.

22. The Department then decided that "[t]here is textual similarity between Title VII and Title IX." *Id*. But the statutes contain different language, so should not be construed to have the same meaning. For example, Title VII states:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex[ ] …; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex[ ]….

42 U.S.C. § 2000e-2(a).

23. On the other hand, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except [pursuant to certain specified statutory exceptions]." 20 U.S.C. § 1681(a).

24. Despite these substantial differences in the statutory texts, the Department proclaimed that "because of … sex" in Title VII has an identical meaning as "on the basis of sex" in Title IX. Exh. A at 32,638.

25. The Department also noted that "[a]dditional case law recognizes that the reasoning of *Bostock* applies to Title IX and that differential treatment of students based on gender identity or sexual orientation may cause harm." *Id*. at

6

32,639. However, it ignored case law which recognizes that "*Bostock* … was limited only to Title VII itself" and "does not stretch to [other statutes]." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021); *see also Adams,* 57 F.4th at 796 (overturning decision upon which Defendants relied—in Exh. A at 32,639 and Exh. D at 2–3—in determining that Title IX prohibits discrimination on the basis of gender identity); *Neese v. Becerra*, —F.Supp.3d—, No. 2:21-cv-163-Z, 2022 WL 16902425, at *4–5 (N.D. Tex. Nov. 11, 2022) (Kacsmaryk, J.) (*Bostock* and its reasoning do not apply to Title IX).

26. The Department also stated that the interpretation described in the Notice "is most consistent with the purpose of Title IX[.]" Exh. A at 32,639. It further emphasized that "[t]he U.S. Department of Justice's Civil Rights Division has concluded that *Bostock*'s analysis applies to Title IX." *Id*; *see* Exh. D, U.S. Dept. of Justice, Mem. Re: Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021).

27. The Department concluded that its Office for Civil Rights "will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive Federal financial assistance from the Department" and the Notice "will guide the Department in processing complaints and conducting investigations." Exh. A at 32,639.

B. **The June 23 Letter and Fact Sheet**

28. On June 23, 2021, the Department's Acting Assistant Secretary for Civil Rights published a Dear Educator Letter in which she emphasized to Title IX recipients that the Department will "fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive Federal financial assistance from the Department." *See* Exh. B at 3.

7

29. The Department included a Fact Sheet with the Letter; the Fact Sheet was jointly issued by the Department's Office for Civil Rights and the Department of Justice's Civil Rights Division. *See* Exh. C.

30. The Fact Sheet lists "[e]xamples of the kinds of incidents" the Department and DOJ can investigate as discrimination pursuant to Title IX. *Id.* at 1. One example (all uses of female pronouns *sic*) is:

> On her way to the girls' restroom, a transgender high school girl is stopped by the principal who bars her entry. The principal tells the student to use the boys' restroom or nurse's office because her school records identify her as "male."

*Id.* Another example:

> A transgender high school girl student joins her friends to try out for the girls' cheerleading team and the coach turns her away from tryouts solely because she is transgender. When the student complains, the principal tells her "those are the district's policies."

*Id.* And, as a third example, the Fact Sheet states that referring to a transgender student by a name or pronouns other than the ones the student prefers would be discrimination under Title IX. *Id.*

31. That the Defendants intend to use their new twist on Title IX to force dissenters from their new gender orthodoxy to bend the knee is no idle speculation. On December 6, 2022, the Department's Office for Civil Rights opened an investigation into whether Granbury Independent School District had created a hostile environment for students based on "gender identity."[2] It initiated the

---

[2] Talia Richman, *Feds open civil rights investigation into Granbury schools after LGBTQ book removals*, The Dallas Morning News (Dec. 20, 2022), available at https://www.dallasnews.com/news/education/2022/12/20/feds-open-civil-rights-investigation-into-granbury-schools-after-lgbtq-book-removals/ (accessed June 14, 2023).

investigation based on a complaint filed by the American Civil Liberties Union of Texas which relied upon the Notice, Letter, and Fact Sheet as the basis for its allegations of discrimination.[3]

32. Private entities are weaponizing the Notice, Letter, and Fact Sheet to provoke Defendants to use their powers of investigation and enforcement to pressure Texas to change its laws and policies.[4]

### C. *Bostock* Does Not Apply to Title IX

33. The Notice, Letter, and Fact Sheet make several substantive rule changes including requirements that schools and other recipients of Title IX funding treat biological males as females and biological females as males when applying sex-specific policies or using sex-specific pronouns despite such policies being neutral regarding gender identity (because they disregard that concept altogether).

34. The Notice, Letter, and Fact Sheet justify the Department's new position by relying on *Bostock*. However, that case does not support the position taken in any of those documents.

35. *Bostock* is much narrower than the Notice, Letter, and Fact Sheet. *Bostock* emphatically disclaimed that it decided whether "sex-segregated bathrooms, locker rooms, and dress codes" would violate Title VII. *Bostock*, 140 S. Ct. at 1753. *Bostock* also did not address the use of pronouns.

36. Furthermore, *Bostock* did not create new classes of individuals protected by Title VII. Instead, it applied existing rules applicable to discrimination because

---

[3] *See* Granbury Indep. Sch. Dist. Compl. at 5–6, available at https://www.aclutx.org/sites/default/files/aclutx_granbury_isd_title_ix_complaint.pdf (accessed June 14, 2023).

[4] *See* Frisco Indep. Sch. Dist. Compl. at 4, available at https://www.aclutx.org/sites/default/files/ocr_complaint_letter_for_frisco_isd.pdf (accessed June 14, 2023); Keller Indep. Sch. Dist. Compl. at 6, available at https://www.aclutx.org/sites/default/files/keller_isd_ocr_complaint.pdf (accessed June 14, 2023).

of an individual's sex. *Stollings v. Texas Tech Univ.*, No. 5:20-cv-250-H, 2021 WL 3748964, at *10 (N.D. Tex. Aug. 25, 2021) (Hendrix, J.) ("While *Bostock* held that Title VII protection based on sex classification includes an individual's sexual orientation, it did not establish a new or otherwise separate protected class, but instead clarified the scope of sex classification.") (citing *Bostock*, 140 S. Ct. at 1739).

37. *Bostock* did not modify the definition of "sex." To the contrary, it "proceed[ed] on the assumption that 'sex' … refer[s] only to biological distinctions between male and female," not "norms concerning gender identity." *Bostock*, 140 S. Ct. at 1739.

38. Most importantly, the *Bostock* Court did not address the meaning of "on the basis of sex" in Title IX. Nor did the Court consider Title IX's express carve-out for "separate living facilities for the different sexes," 20 U.S.C. § 1686, which include "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33. Likewise for the regulatory allowance for "separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport," 34 C.F.R. § 106.41(b), that was promulgated soon after Title IX was enacted and allowed to go into effect after a lengthy review by Congress for consistency with the purposes of the statute.

39. The *Bostock* Court did not consider or decide any questions about any statute other than Title VII.

40. Even if these terms in Title IX were ambiguous, the fact that the statute was enacted under the so-called Spending Clause, U.S. Const. art. I, § 8, cl.1, brings into play the clear-statement rule applicable to such exercises of authority—"if Congress intends to impose a condition on the grant of federal moneys [under its Spending Clause authority], it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). This canon of construction had no relevance to *Bostock*'s Title VII because that statute was not enacted pursuant to

the spending power of Congress. And rather than a clear statement supporting the Department's attempts to abolish single-sex facilities and programs in our Nation's educational institutions, the text of Title IX and its implementing regulations point in the other direction, recognizing their legitimacy. *See Adams*, 57 F.4th at 815–17 (relying on *Pennhurst* clear-statement rule to reject interpretation of Title IX as equating "sex" with "gender identity" or "transgender status"). "[S]chools across the country separate bathrooms based on biological sex and colleges and universities across the country separate living facilities based on biological sex," making any notion that recipients of federal education funding "could or should have been on notice that a policy of separating male and female bathrooms violates Title IX and its precepts untenable." *Id.* at 816 (cleaned up). The same is true for allowing pronoun usage based on biological sex rather than gender identity, and for allowing separate sports teams for males and females.

41. A related obstacle to the Department's expansive interpretation of Title IX is the major questions doctrine, which applies "if an agency claims the power to make decisions of vast 'economic and political significance.'" *Brown v. U.S. Dep't of Educ.*, —F.Supp.3d—, No. 4:22-cv-0908-P, 2022 WL 16858525, at *11 (N.D. Tex. Nov. 10, 2022) (Pittman, J.) (quoting *West Virginia v. EPA*, 142 S. Ct. 2587, 2607–14 (2022)), *cert. granted before judgment sub nom. Dep't of Educ. v. Brown*, 143 S. Ct. 541 (Dec. 12, 2022) (Mem.). It is difficult to imagine a more radical decision of vast economic and political significance than requiring every public school and institution of higher education to allow students to access facilities and sports teams of the opposite sex based on a subjective assertion. *See, e.g., Adams v. Sch. Bd. of St. Johns Cnty.*, 3 F.4th 1299, 1328 (11th Cir. 2021) (Pryor, C.J., dissenting) ("Separating bathrooms based on sex 'dates back as far as written history will take us.'") (quoting W. Burlette Carter, *Sexism in the "Bathroom Debates,"* 37 Yale L. &

Pol'y Rev. 227, 287–88 (2018)), *rev'd*, *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc).

42. "Because the major-questions doctrine applies, the Government's assertion of authority is treated with 'skepticism,'" and "'[t]o overcome that skepticism, the Government must … point to clear congressional authorization' permitting its action." *Brown*, 2022 WL 16858525 at *12 (quoting *West Virginia*, 142 S. Ct. at 2614). But there is nothing in the text of Title IX that would indicate that Congress made such an important decision—indeed, its repeated recognition of the legitimacy of single-sex facilities and programs demonstrates that any decision Congress made on the issue is contrary to the Department's interpretation. As "[a]gencies may play the sorcerer's apprentice but not the sorcerer himself," *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (Scalia, J.), the Department has exceeded its limited role.

## II.  The Notice, Letter, and Fact Sheet Irreparably Harm Texas

43. The Notice emphasizes that the Department's Office for Civil Rights "will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive Federal financial assistance from the Department" and the Notice "will guide the Department in processing complaints and conducting investigations." Exh. A. at 32,639.

44. The Notice also advises that the Department "will open an investigation of allegations that an individual has been discriminated against because of sexual orientation or gender identity in education programs or activities." *Id.* The Notice, that is, states that schools will be investigated for following Texas law. *See*, *e.g.*, Tex. Educ. Code § 33.0834 ("an interscholastic athletic competition sponsored or authorized by a school district or open-enrollment charter school may not allow a

student to compete in an interscholastic athletic competition sponsored or authorized by the district or school that is designated for the biological sex opposite to the student's biological sex …").

45. The Department is presently enforcing the Notice, Letter, and Fact Sheet in Texas—and the flawed interpretation of Title IX contained in those documents—in its pending investigation of Granbury ISD. Texas faces a threat that Defendants will continue to enforce the challenged documents against Texas, its agencies, and its political subdivisions.

46. Defendants' enforcement of the Notice, Letter, or Fact Sheet causes Texas to risk the loss of billions of dollars of federal funding for education.

47. Texas has established sex-specific living facilities, showers, locker rooms, and restrooms in reliance on longstanding Department regulations that Title IX and its implementing regulations permit such laws and policies. The challenged documents destabilize those reliance interests.

48. The Notice, Letter, and Fact Sheet impede Texas's sovereign authority to enforce and administer its laws and create pressure on the State to change its laws and practices. They also impose regulatory costs on Texas by requiring it to assess its policies and determine methods of compliance with the Department's requirements.

## CLAIMS FOR RELIEF

### Count I
### Agency Action that Exceeds Statutory Authority
### and is Not in Accordance with Law
### (5 U.S.C. § 706)

49. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law" or "in excess of statutory … authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

50. The Notice, Letter, and Fact Sheet are not in accordance with law and are in excess of statutory authority because they rely upon the interpretation of Title VII described in *Bostock* and apply it to Title IX, despite the textual differences between the two statutes and the express disclaimer in *Bostock* that that ruling did not apply to other federal or state laws.

51. The Notice, Letter, and Fact Sheet are not in accordance with law and are in excess of statutory authority because the plain language of Title IX and its implementing regulations allow recipients of federal education funds to distinguish between biological males and biological females in situations the challenged agency actions condemn. And the correct interpretation of Title IX's prohibition on discrimination "on the basis of sex" does not include protections for the concepts of sexual orientation or gender identity.

52. Defendants did not act in accordance with the law and exceeded their statutory and regulatory authority when promulgating the Notice, Letter, and Fact Sheet, and they do not act in accordance with the law and exceed their statutory and regulatory authority when enforcing the policies set forth in those documents. Accordingly, the Notice, Letter, and Fact Sheet should be set aside, *i.e.*, vacated.

### Count II
### Rules Adopted Without Conducting Required
### Notice-and-Comment Rulemaking
### (5 U.S.C. § 553)

53. The Notice, Letter, and Fact Sheet are not interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice. Rather, they are substantive or legislative rules that required notice-and-comment rulemaking. *See* 5 U.S.C. § 553.

54. "Agencies have never been able to avoid notice and comment simply by mislabeling their substantive pronouncements." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019). "On the contrary, courts have long looked to the contents of the agency's action, not the agency's self-serving label, when deciding whether statutory notice and comment demands apply." *Id.*

55. Courts "evaluate two criteria to distinguish policy statements from substantive rules: whether the rule (1) imposes any rights and obligations and (2) genuinely leaves the agency and its decisionmakers free to exercise discretion." *Texas v. United States (DAPA)*, 809 F.3d 134, 171 (5th Cir. 2015) (cleaned up). The Notice, Letter, and Fact Sheet "changed the substantive standards by which" the Department determines how to enforce Title IX and its implementing regulations, *Texas v. EEOC*, 933 F.3d 433, 443–46 (5th Cir. 2019); they impose rights and obligations and do not leave the Department free to exercise discretion regarding the meaning of discrimination "on the basis of sex" in Title IX. Because the Notice, Letter, and Fact Sheet mandate requirements that bind their targets to obey and the Defendants to enforce, they are substantive or legislative rules that required notice-and-comment rulemaking. *See* 5 U.S.C. § 553.

56. Because they were adopted without the required notice-and-comment procedures they required, the Notice, Letter, and Fact Sheet are invalid and must be set aside, *i.e.*, vacated. *See* 5 U.S.C. §§ 553, 706.

### Demand for Relief

Plaintiff the State of Texas respectfully requests that the Court:

a. Declare that the June 22 Notice of Interpretation, the June 23 Dear Educator Letter, and the Fact Sheet guidance are unlawful agency actions because Title IX does not bar discrimination on the basis of sexual orientation or gender identity, the regulations implementing Title IX do

not bar such discrimination, and these agency actions were required to be promulgated pursuant to notice-and-comment rulemaking;

b. Set aside, *i.e.*, vacate the June 22 Notice of Interpretation, the June 23 Dear Educator Letter, and the Fact Sheet;

c. Issue preliminary and permanent injunctive relief enjoining Defendants from interpreting or enforcing Title IX as barring discrimination based on sexual orientation or gender identity—including by denying federal financial assistance or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions—and from implementing or relying on the June 22 Notice of Interpretation, the June 23 Dear Educator Letter, or the Fact Sheet against the State of Texas (including any of its instrumentalities, agencies, and political subdivisions); and

d. Award such other and further relief as this Court deems just and equitable.

Dated June 14, 2023.

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
(512) 463-2100

Respectfully submitted.

LEIF A. OLSON
Chief, Special Litigation Division

*/s/ Ryan D. Walters*
RYAN D. WALTERS
*Attorney-in-Charge*
Deputy Chief, Special Litigation Division
Texas Bar No. 24105085
ryan.walters@oag.texas.gov

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

16