IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, <br><br> *Plaintiff*, <br><br> v. <br><br> MIGUEL CARDONA, in his official capacity as Secretary of Education, et al., <br><br> *Defendants*. | No. 4:23-cv-604-O |

### Texas's Partially Unopposed Motion for Correction, Clarification, and to Alter or Amend the Final Judgment

Pursuant to the Federal Rules of Civil Procedure, Plaintiff the State of Texas moves for an order correcting and clarifying the Court's Memorandum Opinion and Order (ECF No. 37) and Final Judgment (ECF No. 38), as well as altering or amending the latter to reflect that correction and clarification.

This Court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record," and it "may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a). Notably, because the Court may make such corrections only with leave of the Fifth Circuit once an appeal has been noticed, *see id.*, Texas respectfully requests the Court do so without delay.

Texas also seeks clarification of the Court's Memorandum Opinion and Order and alteration or amendment of the Final Judgment. *See Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 517 (5th Cir. 1969) (a party may "s[eek] district court clarification" where it "ha[s] doubts about the meaning of any part of the injunction"). Relatedly, Texas asks the Court to alter or amend the

1

Final Judgment to be in line with the corrections and clarification sought in this Motion. *See* Fed. R. Civ. P. 59(e).

Defendants do not oppose this Motion's request to correct clerical errors in the Memorandum Opinion and Order and the Final Judgment but do oppose the request for further clarification of the Memorandum Opinion and Order and further alteration or amendment of the Final Judgment.

### I. The Court should correct typographical errors that reverse the meaning of the relief granted.

To begin, Texas seeks correction of the declaratory relief this Court granted. The Court's current relief declares it unlawful to "*not* include sexual orientation or gender identity" in the interpretation of Title IX's anti-discrimination provision. ECF No. 37 at 97, 102, 111 (stating that the Court "**DECLARES** unlawful the interpretation in the Guidance Documents—as well as in any further agency guidance documents—that the antidiscrimination provisions of Title IX do *not* include sexual orientation or gender identity.") (italicized emphasis added); ECF No. 38 at 1 (same). Stated differently, the Court's use of a double negative now appears to *require*—rather than prohibit—interpreting Title IX's anti-discrimination provision as including sexual orientation and gender identity. Given the rest of this Court's careful analysis of Title IX's statutory text and context, this appears to be a clerical error in need of correction.

Defendants do not oppose the Court correcting this relief to the following: "The Court **DECLARES** that the Guidance Documents are unlawful. Relatedly, the Court also **DECLARES** unlawful the interpretation in the Guidance Documents—as well as in any future agency guidance documents—that the anti-discrimination provisions of Title IX include sexual orientation or gender identity." This corrected formulation should be made in the several places the erroneous one appears. *See* ECF No. 37 at 97, 102, 111; ECF No. 38 at 1.

## II. The Court should clarify the scope of the declaratory and injunctive relief granted and alter or amend the Final Judgment to be consistent with that clarification.

In addition, Texas seeks clarification of the scope of the relief granted, and alteration or amendment of the Final Judgment. Defendants oppose this portion of this Motion. The Court's declaratory and injunctive relief says it is targeted to the implementation, enforcement, and interpretation of the Guidance Documents, and not Title IX.

Consider first the Court's declaratory relief. The Court declares unlawful the interpretation "in the Guidance Documents" and "in any further agency guidance documents." ECF No. 37 at 97, 102, 111; ECF No. 38 at 1.[1] The Court excluded any agency actions from this prohibition if they were adopted through notice-and-comment rulemaking. *See* ECF No. 37 at 108. In other words, this Court "declared unlawful" Defendants' "errant Title IX interpretation" in this challenge to the 2021 Guidance Documents, but also suggested it was not announcing a "general Title IX interpretation" that could impact other agency actions to implement that very same statute. ECF No. 37 at 108. But there is no sound basis for limiting this Court's authoritative construction of Title IX to agency actions that do not undergo notice-and-comment rulemaking.

A declaratory judgment—like an injunction, but unlike vacatur—is targeted toward rights and obligations of *parties*, not particular agency actions. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations *of any interested party* seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). And "an injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing." *Black's Law Dictionary* 937 (11th ed. 2019) (quoting 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2–3 (1909)). And both declaratory judgements and injunctions

---

[1] Texas supports retaining this relief (as clerically corrected), but (as described further below) requests further declaratory relief as well.

3

adjudicate those parties' rights and obligations by issuing authoritative pronouncements of what the law means for all times and all places.

Vacatur, by contrast, does not operate *in personam*, and it does not involve coercion because it "does not order the defendant to do anything; it only removes the source of the defendant's authority." *All. for Hippocratic Med. v. FDA.*, 78 F.4th 210, 254 (5th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 428–29 (2009)), *rev'd on other grounds*, *FDA v. All. For Hippocratic Med.*, No. 23-235, 2024 WL 2964140 (U.S. Jun. 13, 2024). Instead, vacatur operates *in rem* against a challenged agency action, is self-executing, and is accomplished through the court's order. It operates "in the same way that an appellate court formally revokes an erroneous trial-court judgment." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012 (2018). Nor does vacatur compel officials to do or refrain from anything. Like the revocation of a court order, judicial annulment of administrative action may alter a party's conduct, but it does not bind any person to do—or refrain from doing—anything.

Similar to its grant of declaratory relief, the Court enjoins the implementation, enforcement, and unlawful interpretation "in the Guidance Documents" and "in any future guidance documents." ECF No. 37 at 111–12; ECF No. 38 at 2. But the Fifth Circuit has termed a "false dichotomy" the notion that "a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir. 2022). Instead, "a challenge to an agency regulation is necessarily a challenge to the [enforcement of the] underlying statute as well[] … because an agency literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Id.* (internal quotations omitted). As a result, limiting relief to particular agency documents or actions that implement what the Court has declared to be an unlawful interpretation of Title IX "rests on the faulty premise that the plaintiffs were [only] 'suing' a regulation." *Id.* And while "suing" a regulation may be an appropriate way to conceive of Texas's request for vacatur, it is not an appropriate way to conceive of Texas's request for an injunction or declaratory relief. Instead, "the right way to view [Texas's] suit was as challenging '*one* Government action that causes their harm: the [Government's]

4

threatened enforcement of the [statute], *through* its implementing regulation.'" *Id.* (emphasis in original) (quoting *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1650 (2022)).

Whether an agency action has or has not undergone notice-and-comment rulemaking is not relevant for whether it is contrary to law as a substantive matter, *see Texas v. United States (DACA)*, No. 1:18-cv-68, —F.Supp. 3d—, 2023 WL 5951196, at *11–13, 17 (S.D. Tex. Sept. 13, 2023) (Hanen, J.) (finding rule adopted via notice and comment to be contrary to law for same reasons as earlier informal guidance document that was substantively identical), *appeal filed,* No. 23-40653 (5th Cir. Nov. 9, 2023). It is the province and duty of this Court "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). And this Court's authoritative construction of Title IX, while settling the parties' rights and obligations, therefore binds the parties and may not be transgressed through *any* type of agency action. While vacatur is necessarily limited to particular agency actions, the declaratory and injunctive relief awarded here is properly based on an interpretation of *the statute* (Title IX) that is merely implemented *through* particular agency actions (present or future). The current relief thus does not reflect the proper scope of remedies against unlawful agency action.

When this Court addressed a very similar case in 2016, it not only enjoined defendants from unlawfully enforcing the guidance document at issue there, but also from "initiating, continuing, or concluding any investigation based on Defendants' interpretation that the definition of sex includes gender identity *in Title IX's* prohibition against discrimination on the basis of sex." *Texas v. United States*, 201 F. Supp. 3d 810, 836 (N.D. Tex. 2016) (emphasis added). This Court seemed to intend to include similar relief here, with its Memorandum Opinion and Order reflecting the Court's view that Texas's injuries were redressable by "a declaratory judgment that the documents are unlawful *because Title IX* does not bar discrimination on the basis of sexual orientation or gender identity… ." ECF No. 37 at 40 (emphasis added to "Title IX"). In other words, Defendants' guidance conflicts with Title IX's protections: Admitting biological men and boys to participate in programs and spaces set aside for women and girls robs the latter of comparable opportunities to thrive that Title IX guarantees them. *See, e.g.*, 20 U.S.C. §1681(a)(8).

That is what Title IX *means*—equal opportunities for "one sex" as for "the other"— and that is what this Court *held*, any guidance document or agency rule to the contrary notwithstanding.

Accordingly, Texas requests that this Court clarify that, as between the State of Texas and its schools in relation to Defendants, Title IX precludes Defendants' efforts to include sexual orientation or gender identity in efforts to implement that statute. The relevant portions of this Court's Final Judgment (as well as the reproduction of that relief in the Memorandum Opinion and Order, ECF No. 37 at 111–112) could then read like this:

> 3. (a) The Court **DECLARES** that the Guidance Documents are unlawful. Relatedly, the Court also **DECLARES** unlawful the interpretation in the Guidance Documents—as well as in any future agency guidance documents—that the anti-discrimination provisions of Title IX include sexual orientation or gender identity.[2]
>
> (b) The Court also **DECLARES** that Title IX's prohibition against discrimination on the basis of sex does not include sexual orientation or gender identity.
>
> 4. The Court **ENJOINS** Defendants and their agents from implementing or enforcing the Guidance Documents against Plaintiff and its respective schools, school boards, and other public, educationally based institutions. Defendants and their agents are also **ENJOINED** from implementing or enforcing Title IX based on an interpretation that "sex" includes gender identity or sexual orientation in Title IX's prohibition against discrimination on the basis of sex against Plaintiff and its respective schools, school boards, and other public, educationally based institutions. Further, Defendants and their agents are **ENJOINED** from initiating, continuing, or concluding any investigation based on Defendants' interpretation that defines "sex" to includes gender identity or sexual orientation in Title IX's prohibition against discrimination on the basis of sex against Plaintiff and its respective schools, school boards, and other public, educationally based institutions. Additionally, Defendants and their agents are **ENJOINED** from using the Guidance Documents or asserting the Guidance Documents carry any weight— as well as any future agency guidance documents—in any litigation in Texas or against Plaintiff and its respective schools, school boards, and other public, educationally based institutions that is initiated following the date of this Final Judgment.

---

[2] This corrected declaratory relief —3. (a)—is unopposed by Defendants. The next subsections— 3. (b), and 4.—are altered or amended relief sought for the Final Judgment and for clarification in the Memorandum Opinion and Order, and is opposed by Defendants.

## Conclusion

The Court should correct the clerical error in its Memorandum Opinion and Order and its Judgment. It should also clarify that the declaratory and injunctive relief ordered reflects that Title IX's guarantee of equal educational opportunities for girls and boys, regardless of sex, does not include sexual orientation or gender identity that would undercut the very rights Title IX secures, and that Defendants are enjoined from implementing or enforcing Title IX against Texas and its schools contrary to the law's terms as interpreted by this Court. And the Final Judgment should be altered or amended to reflect that as well.

Dated June 14, 2024.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

Respectfully submitted.

*/s/ Ryan D. Walters*
RYAN D. WALTERS
*Attorney-in-Charge*
Chief, Special Litigation Division
Texas Bar No. 24105085

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

AMY S. HILTON
Special Counsel
Texas Bar No. 24097834

ETHAN SZUMANSKI
Special Counsel
Texas Bar No. 24123966

Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ryan.walters@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
amy.hilton@oag.texas.gov
ethan.szumanski@oag.texas.gov

**Counsel for the State of Texas**

**CERTIFICATE OF CONFERENCE**

I certify that on June 13 and 14, 2024, I conferred with Rebecca Kopplin, counsel for Defendants—via email at Rebecca.M.Kopplin@usdoj.gov—regarding this Motion. Ms. Kopplin was authorized to speak for the unavailable Ben Takemoto, one of the counsel of record for Defendants in this case. She stated that Defendants, without prejudice to their own ability to seek clarification or reconsideration of this Court's order, do not oppose the first part of this Motion, which seeks correction of the declaratory relief granted to "The Court **DECLARES** that the Guidance Documents are unlawful. Relatedly, the Court also **DECLARES** unlawful the interpretation in the Guidance Documents—as well as in any future agency guidance documents—that the anti-discrimination provisions of Title IX include sexual orientation or gender identity." Defendants do, however, oppose any further relief sought in this Motion.

*/s/ Ryan D. Walters*
RYAN D. WALTERS

**CERTIFICATE OF SERVICE**

I certify that on June 14, 2024, this document was filed through the Court's CM/ECF system, which served it upon all counsel of record.

*/s/ Ryan D. Walters*
RYAN D. WALTERS