IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| STATE OF TEXAS, <br><br> *Plaintiff*, <br><br> v. <br><br> MIGUEL CARDONA, in his official capacity as Secretary of Education, *et al.*, <br><br> *Defendants*. | Civil Action No. 4:23-cv-604-O |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO ALTER OR AMEND THE FINAL JUDGMENT**

**INTRODUCTION**

In its June 11, 2024 Final Judgment, the Court vacated and set aside the Challenged Documents at issue in this case, declared them unlawful, declared unlawful the interpretation of Title IX in the Challenged Documents as including discrimination on the basis of sexual orientation and gender identity, and enjoined Defendants prospectively from "otherwise implementing or enforcing" the interpretation of Title IX in the Challenged Documents.[1] The Court expressly noted that all relief not awarded in the Final Judgment—including the relief Plaintiff Texas now seeks—was denied, setting forth a detailed explanation of why it tailored the relief as it had in its concomitant Memorandum Opinion and Order. Through its motion, Texas would expand the scope of relief awarded dramatically, to include what the Court denied. That effort runs headlong into Federal Rule of Civil Procedure 59(e), the Declaratory Judgment Act, and various constitutional, statutory, and equitable limits on federal court power. The Court should reject it.[2]

**ARGUMENT**

**A.      Texas has not met Rule 59(e)'s high bar for reconsideration of a final judgment.**

Litigants possess a strong interest in the finality of judgments. Accordingly, Rule 59(e) imposes a stringent test for disturbing a final judgment once entered. *Koerner v. CMR Constr. & Roofing, LLC*, 910 F.3d 221, 227 (5th Cir. 2018) (so describing Rule 59(e) in contrast to Rule 54(b), which permits amendments of interlocutory judgments). "[I]t is well-established that Rule 59(e) reserves the alteration or amendment of a federal court's judgment only for the narrow purposes of either: (1) accommodating an intervening change in controlling law; (2) accounting for newly discovered evidence; or (3) correcting a manifest error of law or fact." *Wells v. Lumpkin*, No. 4:21-cv-1384-O, 2024 WL 69161, at *1 (N.D. Tex. Jan. 5, 2024) (O'Connor, J.) (citing *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019)). "Inversely, Rule 59(e) 'is not the proper

---

[1] To the extent Defendants disagree with any aspect of the Court's ruling, they will seek appropriate relief in due course.

[2] Texas correctly notes that Defendants do not oppose the portion of its motion that seeks correction of an apparent clerical error. *See* Mot. to Alter or Amend the Final Judgment (ECF No. 39) at 1.

1

vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" *Id.* (quoting *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). Unsurprisingly, these guardrails around Rule 59(e) relief make it an "extraordinary remedy that should be used sparingly," *id.* (quoting *Templet*, 367 F.3d at 479), as this Court and the Fifth Circuit have repeatedly emphasized. *See, e.g.*, *Rollins v. Home Depot USA*, 8 F.4th 393, 396 (5th Cir. 2021); *Def. Distributed v. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020); *Mandawala v. Baptist Sch. of Health Profs.*, No. 23-50258, 2024 WL 1461943, at *4 (5th Cir. Apr. 4, 2024); *Wilson v. City of Southlake*, No. 4:16-cv-57-O, 2018 WL 10290414, at *2 (N.D. Tex. Feb. 22, 2018) (O'Connor, J.); *Blank v. United States*, No. 4:14-cv-502-O, 2017 WL 394519, at *1-2 (N.D. Tex. Jan. 9, 2017) (O'Connor, J.); *Luig v. N. Bay Enters.*, No. 7:13-cv-94-O, 2015 WL 13118140, at *1-2 (N.D. Tex. Jan. 29, 2015) (O'Connor, J.).

Texas now asks the Court to declare, outside the context of the Challenged Documents, that its analysis of Title IX's prohibition on sex discrimination "does not include sexual orientation or gender identity," in (presumably) all contexts and for all purposes. Mot. at 6. It also seeks amendment of the Final Judgment to enjoin Defendants from relying on the Title IX interpretation included in the Challenged Documents. *Id.* But Texas identifies no basis that is consistent with the foregoing principles to disturb the Final Judgment's remedial contours, carefully laid out by this Court to exclude what Texas now requests. *See* Mem. Op. & Order (ECF No. 37) at 107-10 (tailoring the relief awarded in the Final Judgment). Indeed, tellingly, Texas neglects to identify the relevant principles governing Rule 59(e) relief at all. Instead, Texas merely asserts "there is no sound basis for limiting this Court's authoritative construction of Title IX to agency actions that do not undergo notice-and-comment rulemaking." Mot. at 3. It goes on to urge that several, material differences separate declaratory judgments and injunctions (which purportedly operate in personam) from vacatur (which purportedly operates in rem). *Id.* at 3-4. And that these factors, taken together, allegedly justify a dramatic expansion in the Final Judgment's declaratory and injunctive scope from the Challenged Documents specifically put at issue in this litigation to every

2

interpretation, formal and informal, of Title IX in which Defendants may engage in the future. *See id.* at 6.

Texas' arguments fall well short of making out a "manifest error of law or fact" in the Court's decision to limit its declaratory and injunctive relief to the Challenged Documents. *Wells*, 2024 WL 69161 at *1 (citing *Trevino*, 944 F.3d at 570). Such an error only exists where the movant can "demonstrate that the federal court[']s]" mistake was "plain and indisputable" and "amounts to a complete disregard of the controlling law." *Id.* (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)). And for the reasons outlined below, Texas does not put forward a "plain" or "indisputable" error that would justify its extraordinary request.

**B.     Texas' requested declaratory and injunctive relief would exceed longstanding constitutional, statutory, and equitable limits on federal judicial power.**

**1.** Article III of the Constitution empowers federal courts to decide only "cases" and "controversies." U.S. Const., art. III, § 2. In keeping with that bedrock limitation on the federal judicial power, federal courts routinely abstain, as they must, from expounding through advisory opinions on abstract propositions of law, divorced from specific facts presented by parties before them. *Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("Thus, no justiciable controversy is presented . . . when the parties are asking for an advisory opinion, [and] when the question sought to be adjudicated has been mooted by subsequent developments[.]"); *United States v. Fruehauf*, 365 U.S. 146, 157 (1961).

The amendment to the Final Judgment Texas now seeks would result in precisely the sort of "advance expression[] of legal judgment" that the Constitution does not authorize the federal judiciary to make. *Fruehauf*, 365 U.S. at 157. Texas proposes that the Court declare not the "rights and obligations of parties," 28 U.S.C. § 2201(a); *see also* Mot. at 3—but rather the content of federal law. *See* Mot. at 6 (proposing that the Court declare "that Title IX's prohibition against discrimination on the basis of sex does not include sexual orientation or gender identity"). Such a change would result in an advisory opinion. This is so because although courts routinely engage in *analysis* along the lines of Texas' proposed order language when adjudicating the merits of

3

concrete cases and controversies, they are without the power to grant as *relief* a broad, untethered-to-facts statement like the one Texas requests. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights . . . The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts."). Although "[j]urisdiction is power to declare the law," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)) exercise of that power extends only to specific claims of injury resting on real-world facts. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Where, as here, a plaintiff points to no facts requiring judicial intervention, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *McCardle*, 74 U.S. at 506).

**2.** The Declaratory Judgment Act (DJA) changes little in this analysis. The text of the statute itself carefully respects Article III. *See* 28 U.S.C. § 2201(a) (authorizing a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" only "[i]n a case of actual controversy"). It is thus only within traditional Article III limits that power under the DJA may be exercised. *MedImmune*, 549 U.S. at 127 ("The 'case or controversy' requirement prevents us from 'advising what the law would be upon a hypothetical state of facts.'" (citation omitted)); *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294-95 (5th Cir. 2019) (first part of three-part test for declaratory relief requires the court to ascertain "whether an actual controversy exists between the parties" (cleaned up)); *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

The requirement of an "actual controversy" underscores that a declaratory judgment should be properly tethered to specific facts before the Court, not to general pronouncements of law of the type Texas seeks. *Frye*, 953 F.3d at 294-95. Moreover, whatever concrete controversy might have existed has been mooted by the Final Judgment, which encompasses declaratory and injunctive relief alongside vacatur to prohibit Defendants from relying on or enforcing the

4

Challenged Documents (as well as, in future guidance documents, the legal interpretation underlying the Challenged Documents), the source of the injury that Texas identified in this case. The Court's opinion comprehensively explained its conclusion that Texas had standing because it suffered injury-in-fact from the Challenged Documents. Mem. Op. & Order at 24-38. When the Court entered the Final Judgment, in turn, Texas' complained-of injury ceased. And so no further relief is available under the Declaratory Judgment Act. *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (request for declaratory relief as to constitutionality of state statutes mooted when underlying question of legal relationship—"liability for the death of appellee's son"—had been decided, depriving the courts of jurisdiction).

**3.** In addition, longstanding principles of equity prevent the Court from granting the relief Texas seeks through a modification to the scope of its injunction. *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund*, 527 U.S. 308, 319 (1999) (federal courts' equitable authority is generally limited to relief "traditionally accorded by courts of equity"). As the Court itself recognized, the "scope of injunctive relief is 'dictated by the extent of the violation established.'" Mem. Op. & Order at 107 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Gill v. Whitford*, 585 U.S. 48, 66 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

Texas would treat this principle as a floor when it is in fact a ceiling, for injunctive relief must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702. The "extent of the violation established," and "complete relief," in turn, are necessarily measured with reference to the particular injury the plaintiff complains of suffering. Here, according to Texas, those injuries stem from the Challenged Documents. *See* Mem. Op. & Order at 24-38; *see also Dakotans for Health v. Noem*, 52 F.4th 381, 392-93 (8th Cir. 2022) ("A preliminary injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law." (cleaned up)). And because the Final Judgment prevents the injuries claimed through an injunction

5

operating against Defendants' enforcement of, or reliance on, those documents, there is no remaining source of injury to Texas.

4. Texas offers scant analysis in addressing these principles. It insists that "no sound basis" differentiates the Challenged Documents from rules promulgated after notice and comment, Mot. at 3, 5-6, but the aforementioned limits on judicial power—duly recognized by the Court, Mem. Op. & Order at 107-10—furnish a more than sufficient basis. Nor do Texas' claims about remedial distinctions between declaratory judgments, injunctions, and vacatur suffice to merit amendment of the judgment. Putting aside the contested nature of Texas' characterization of vacatur as universal in scope, *but see United States v. Texas*, 599 U.S. 670, 693-702 (2023) (Gorsuch, J., concurring) (suggesting that traditional equitable limitations apply to actions seeking vacatur under the APA); *Arizona v. Biden*, 40 F.4th 375, 396-97 (6th Cir. 2022) (Sutton, C.J., concurring) (similar), these arguments are nonresponsive to the problems raised above even if they are accepted as true. Declaratory judgments, injunctions, and vacaturs all do not permit a federal court to include in the scope of relief a statement, divorced from the controversy and associated injury before it, representing a broad, untethered pronouncement of the law.

*Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), is not to the contrary. The plaintiffs in that case claimed that the Religious Freedom Restoration Act (RFRA) absolved them from any regulatory requirement to perform or provide insurance coverage for gender-transition care or abortions. *Id.* at 372. The Court entered permanent injunctive relief for plaintiffs, holding that being so required would impose an impermissible burden on their religious exercise under RFRA. *Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361, 378 (N.D. Tex. 2021) (O'Connor, J.). Specifically, the relief awarded extended not only to the 2016 rule that the plaintiffs had challenged at the outset, but also to future enforcement efforts under the same statute that authorized the rule in question. *Id.* at 377-78. In other words, the Court accepted those plaintiffs' claim that they would be injured under RFRA not only by the 2016 rule, but by further interpretations under the same statute that would require them to engage in the same behavior.

6

Here, in contrast, Texas has not asserted a claim that being compelled to engage in certain behavior would contravene its rights under a distinct statute, such as RFRA, the violation of which was found to have furnished an independent source of injury in *Franciscan Alliance*. Rather, Texas would have the Court flatly declare a legal interpretation of a statute that, for the reasons expressed by the Court, would stretch beyond recognition longstanding constitutional, statutory, and equitable principles. Texas's attempt to do so should be rejected.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion.

Dated: June 19, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA WELLS
Assistant Branch Director

*/s/ Simon G. Jerome*
SIMON G. JEROME (D.C. Bar No. 1779245)
JOHN T. LEWIS
BENJAMIN T. TAKEMOTO
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-2705
Email: simon.g.jerome@usdoj.gov

*Counsel for Defendants*

8