IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, <br><br> *Plaintiff*, <br><br> v. <br><br> MIGUEL CARDONA, in his official capacity as Secretary of Education, et al., <br><br> *Defendants*. | No. 4:23-cv-604-O |

### Reply in Support of Texas's Partially Unopposed Motion for Correction, Clarification, and to Alter or Amend the Final Judgment

Defendants do not oppose this Court correcting the clerical errors in its Memorandum Opinion and Order (ECF No. 37) and Final Judgment (ECF No. 38). *See* ECF No. 42, Defendants' Br. at 2 n.2.[1] On the contested other relief sought, Defendants refuse to defend the distinction in relief against agency actions that undergo notice-and-comment rulemaking and those that do not—despite the limiting of declaratory and relief to the former being the main error that Texas asks the Court to correct. *See* ECF No. 39, Motion at 3–6. Despite not filing their own motion to alter or amend the judgment, they instead set forth an argument that contradicts the relief this Court has already granted against future guidance documents. As Defendants fail to counter the arguments to extend relief to any agency action that is contrary to the proper interpretation of Title IX determined by the Court, the Motion should be granted.

---

[1] Citations to documents filed on the electronic docket are to the file-stamped pagination indicated in the header.

I.  **Defendants attempt to relitigate the Court's determinations and relief granted.**

Defendants venture into Article III's case-and-controversy requirement and limits on equity, Defendants' Br. at 4–6. The argument at essence is that the Court would be issuing an advisory opinion or would be granting relief broader than the injury if it granted declaratory or injunctive relief that would apply to future agency actions that interpret Title IX to include sexual orientation or gender identity as protected from discrimination. Throughout their opposition, the Defendants assert that declaratory and injunctive relief is only properly directed to the Guidance Documents themselves. *See, e.g.,* Defendants' Br. at 3 (criticizing Texas's request that the Court "declare, outside the context of the Challenged Documents, that its analysis of Title IX's prohibition on sex discrimination 'does not include sexual orientation or gender identity,' in (presumably) all contexts and for all purposes.") (quoting Motion at 6); *id.* at 3–4 (similarly criticizing Texas's request for "a dramatic expansion … [of the] declaratory and injunctive scope from the Challenged Documents specifically put at issue in this litigation to every interpretation, formal and informal, of Title IX in which Defendants may engage in the future.").

Although they carefully refrain from attacking the Court's currently granted relief, this argument would equally apply to it—because declaratory relief has already been granted against "the interpretation … that the anti-discrimination provisions of Title IX … include sexual orientation or gender identity" that may occur "in any future agency guidance documents,"[2] and injunctive relief has been granted against implementation of "future agency guidance documents" that are based on an interpretation that "define 'sex' to include[] gender identity or sexual orientation in Title IX's prohibition against discrimination on the basis of sex." ECF No. 38 at 1–2. The Court has further explained that "[t]his injunction likewise extends to future non-final rule agency actions that promote the Department's unlawful interpretation of Title IX." ECF No. 37

---

[2] "The courts ordinarily … have issued declaratory judgments about the legal consequences of future conduct." Wright & Miller, 20 Fed. Prac. & Proc. Deskbook § 106 (2d ed.).

at 110. Defendants therefore rest all their arguments against Texas's sought relief on distinctions that would nullify the relief the Court has already granted.

This Court has already determined that Texas has standing to challenge the agency actions in this case and satisfied the closely related ripeness requirement. ECF No. 27 at 23–48. In this "case or controversy," the Court repeatedly determined not just that the particular Guidance Documents were unlawful in some vague sense, but because Title IX did not include within its ambit sexual orientation or gender-identity discrimination—and this determination extended beyond the Guidance Documents themselves. The Court found that "'on the basis of sex' is best read to *not* include sexual orientation or gender identity, notwithstanding the Department's incorrectly characterization that *Bostock* requires and permits the newly expanded interpretation of Title IX," ECF No. 37 at 38, and that "[b]y interpreting the term 'sex' in Title IX to embrace 'gender identity' as distinct from biological sex, the Guidance Documents are contrary to law and exceed the Department's statutory authority." ECF No. 37 at 62.

And these broad pronouncements applied beyond the particular Guidance Documents that led to this litigation. The Court explained that it could "provide relief by enjoining Defendants from conducting enforcement actions based on the Guidance Documents—*or similar guidance*—in the future." ECF No. 37 at 39 (emphasis added). It further found Texas's injuries to be redressable because "a declaration concerning and/or injunction restraining such interpretations and concomitant enforcement would certainly protect Texas from adverse agency action—*Guidance Documents or otherwise*." ECF No. 37 at 40 (emphasis added). "Likewise, a declaratory judgment that the documents are unlawful because Title IX does not bar certain discrimination on the basis of sexual orientation or gender identity would be a binding decision precluding administrative action that would penalize Texas schools for its current law and policies." ECF No. 37 at 40. The Court also recognized that "[i]n this case, Texas does not challenge a particular enforcement action by Defendants that finds Texas out of conformity with the Guidance Documents. Instead, Texas challenges both the legitimacy of Defendants' interpretation of Title IX and their authority

to even promulgate that expansive interpretation in the Guidance Documents in the first place." ECF No. 37 at 56–57.

The Court also reasoned that "[g]iven that the Department has enacted similar guidance in the past and may attempt to do so again as an end-run to the Court's relief, a broader injunction is necessary to provide complete relief," and recognized that "this would not be the first time that a government body repeals a challenged document or action and replaces it with something substantially similar, thereby causing comparable injuries." ECF No. 37 at 108. "To avoid that situation here," the Court limited its injunctive relief to "only to the Guidance Documents in this case, along with any future non-final rule agency action, such as guidance documents, that rely on the errant Title IX interpretation declared unlawful"—but did not apply it to "the Final Rule or, broadly speaking, the general Title IX interpretation that could underlie a future final rule." ECF No. 37 at 108.

Texas understands this to carve out any current or future agency action that undergoes notice-and-comment rulemaking from the Court's relief. But the injuries inflicted on Texas by the Defendants' implementation of Title IX —meticulously set out by the Court, ECF No. 37 at 24–36—will be no different whether their substance is promulgated through notice and comment or not. Full relief against the threatened harms to Texas therefore also requires protection against current or future agency actions that have undergone that process.

Courts do not hesitate to issue declaratory and injunctive relief that prevents an agency from applying an unlawful interpretation of a statute in future agency actions. *See, e.g.*, *Franciscan All., Inc. v. Becerra*, 553 F.Supp.3d 361, 378 (N.D. Tex. 2021) (O'Connor, J.) (court enjoining agency "from interpreting or enforcing Section 1557 of the Affordable Care Act … or any implementing regulations" against plaintiffs "in a manner that would require them to perform or provide insurance coverage for gender-transition procedures or abortions"); *Texas v. United States*, 201 F. Supp. 3d 810, 836 (N.D. Tex. 2016) (O'Connor, J.) (enjoining agency not only from using challenged guidance document but also from "initiating, continuing, or concluding any investigation based on Defendants' interpretation that the definition of sex includes gender

4

identity *in Title IX's* prohibition against discrimination on the basis of sex.") (emphasis added); *Neese v. Becerra*, No. 2:21-cv-163, (N.D. Tex. Nov. 22, 2022), ECF No. 71 (Final Judgment) (Kacsmaryk, J.) ("The Court DECLARES: ... Section 1557 of the ACA does not prohibit discrimination on account of sexual orientation and gender identity, and the interpretation of 'sex' discrimination that the Supreme Court of the United States adopted in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), is inapplicable to the prohibitions on 'sex' discrimination in Title IX of the Education Amendments of 1972 and in Section 1557 of the ACA."); *Religious Sisters of Mercy v. Azar*, 513 F.Supp.3d 1113, 1153–54 (D.N.D. 2021) ("The Court DECLARES that HHS's interpretation of Section 1557 that requires [plaintiffs] to perform and provide insurance coverage for gender-transition procedures" is unlawful and granting injunction against agency "interpreting or enforcing Section 1557 of the ACA" in the same way), *affirmed*, 55 F.4th 583 (8th Cir. 2022); *Christian Employers Alliance v. EEOC*, No. 1:21-cv-195, 2024 WL 935591, *10 (D.N.D. Mar. 4, 2024) (enjoining federal agency "from interpreting or enforcing Section 1557 of the Affordable Care Act ... in a manner that would force [plaintiffs] to perform or provide insurance coverage for gender-transition procedures");

Of course, the elephant in the room is *Franciscan All., Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), which directly contradicts Defendants' proposed limits on relief. Defendants attempt to distinguish that case at the very end of their opposition. Defendants' Br. at 7–8. Although they concede that "the relief awarded [in that case] extended not only to the 2016 rule that the plaintiffs had challenged at the outset, but also to future enforcement efforts under the same statute [Section 1557 of the ACA] that authorized the rule in question," Defendants' Br. at 7—the same relief sought in the Motion here—Defendants maintain that the interaction of another statute, the Religious Freedom Restoration Act (RFRA), makes that case *sui generis*. Defendants' Br. at 8 ("Here, by contrast, Texas has not asserted a claim that being compelled to engage in certain behavior would contravene its rights under a distinct statute, such as RFRA, the violation of which was found to have furnished an independent source of injury in *Franciscan Alliance*."). Perhaps the gentlest way to rebut this attempted distinction is that, when it rejected defendants' argument that

a challenge to a rule could not obtain relief against the enforcement of the underlying statute, *Franciscan Alliance* cited as authority *FEC v. Cruz*, 142 S. Ct. 1638 (2022), which involved no such outside interacting statute supposedly constituting "an independent source of injury." *See Franciscan All.*, 47 F.4th at 378 (citing *Cruz*, 142 S. Ct. at 1649–50). The Fifth Circuit explained that "*Cruz* said that there is no metaphysical difference between a challenge to a rule and the underlying statute because '[a]n agency's regulation cannot 'operate independently of' the statute that authorized it.'" *Id.* at 379 (quoting *Cruz*, 142 S. Ct. at 1649). And that was that.

But a closer look at *Franciscan Alliance* shows that the relief sought in the Motion here is on even stronger ground than the relief upheld there. The Fifth Circuit found that this Court "did not err" "granting injunctive relief against Section 1557 and all future agency actions." *Franciscan All.*, 47 F.4th at 374. This was even though the plaintiffs there had "only sought relief [in the complaint] from the 2016 Rule—not from Section 1557 more broadly." *Id.* at 377. Here, the Court has recognized that "Texas request[ed] that this Court (1) declare that Title IX does not apply to discrimination based on sexual orientation or gender identity, (2) set aside (*i.e.,* vacate) the challenged agency actions, and (3) permanently enjoin their implementation and enforcement of Title IX as including discrimination based on sexual orientation or gender-identity." ECF No. 37 at 97 (citing ECF No. 1, Texas's Complaint 15–16). Indeed, Texas sought from the very beginning of this case "injunctive relief enjoining Defendants from interpreting or enforcing Title IX as barring discrimination based on sexual orientation or gender identity." ECF No. 1 at 16. The Court also described the issue in this case as "whether the federal government may lawfully … interpret Title IX of the 1972 Educational Amendments as prohibiting discrimination based on sexual orientation and gender identity." ECF No. 37 at 1. So much for Defendants' argument that the relief sought here is "divorced from the controversy and associated injury before" the Court. Defendants' Br. at 7.

Any relief against enforcement of Title IX in a way contrary to law as interpreted by this Court is within the scope of the relief sought since the outset of this case, and only such relief will fully remedy Texas' injuries. If "Franciscan Alliance seek[ing] relief from HHS's threat to

prosecute hospitals that refuse to perform gender-reassignment surgeries and abortions" made its complaint seeking relief only against the 2016 Rule also applicable to other applications of the statute (Section 1557) itself, *Franciscan All.*, 47 F.4th at 378, Texas's case is even stronger due to its consistent seeking of relief against *any* use of Title IX to create anti-discrimination requirements based on sexual orientation or gender identity.

And Defendants' frolic into Article III standing arguments is rebutted by the Fifth Circuit: "Appellants argue that Franciscan Alliance lacks standing to seek a permanent injunction against future regulations that may require it to perform abortions or gender-reassignment surgeries" and "that the district court violated Article III when it granted Franciscan Alliance a permanent injunction against hypothetical future Section 1557 enforcement," but "[c]ourts have issued permanent injunctions in these contexts countless times." *Id*. at 379. This Court should decline Defendants' invitation to ignore this norm.

## II. Defendants do not even attempt to defend the distinction between future agency actions that undergo notice-and-comment rulemaking and those that don't.

Although Defendants assert that Texas has not shown a "manifest error of law or fact" in the Memorandum Opinion and Order and the Final Judgment, Defendants' Br. at 4, that error is apparent: there is no basis for limiting relief to future agency actions that fail to undergo notice-and-comment rulemaking. Motion at 5. If the substance of an agency action adopts the interpretation that Title IX covers discrimination on the bases of sexual orientation or gender identity, the injuries to Texas recognized by this Court are the same regardless of the process that action underwent.

In the voluminous briefing on cross-motions for summary judgment, neither party had sought to distinguish the propriety of any relief on this basis. And neither the Memorandum Opinion and Order nor the Final Judgment explain the reason for this specific limitation in granting declaratory or injunctive relief. Most importantly, Defendants do not even address this distinction in their opposition here. Although they dismiss Texas's argument as "scant," Defendants' Br. at 7, theirs is non-existent—there is no defense of this distinction. Defendants' skirting this question

is necessary because, as explained above, they maintain that *all* relief that is targeted at *any* agency action beyond the particular Guidance Documents that precipitated this case is improper—contrary to the relief this Court has already granted.

As Texas explained, Motion at 4–6, courts frequently extend relief to an agency's future applications of a statute, with no distinction as to whether such future actions go through notice and comment. This Court has found that Title IX does not include a prohibition on discrimination based on sexual orientation or gender identity. It has issued declaratory and injunctive relief based on that determination—not only as applied to the Guidance Documents themselves, but to any future agency action that fails to undergo notice-and-comment rulemaking that adopts the same unlawful interpretation. Defendants' only argument is that it would be improper for this Court to issue any relief beyond the Guidance Documents themselves—but the Court has already done so. The Court's limitation of that relief to future agency actions that lack the process of notice-and-comment rulemaking is not justifiable, and Defendants make no attempt to defend it. Texas respectfully asks the Court to grant its Motion.

## Conclusion

As Defendants concede, the Court should correct the clerical error in its Memorandum Opinion and Order and its Final Judgment. But it should also clarify that the relief granted in the Memorandum Opinion and Order applies to any attempts to apply Title IX as including a prohibition on discrimination based on sexual orientation or gender identity—with no distinction between agency actions that undergo notice-and-comment rulemaking and those that evade that requirement. The Court should also amend or alter its Final Judgment to reflect that clarification.

| | |
|---|---|
| Dated June 21, 2024. | Respectfully submitted. |
| KEN PAXTON<br>Attorney General | /s/ Ryan D. Walters<br>RYAN D. WALTERS<br>*Attorney-in-Charge*<br>Chief, Special Litigation Division<br>Texas Bar No. 24105085 |
| BRENT WEBSTER<br>First Assistant Attorney General | |
| RALPH MOLINA<br>Deputy Attorney General for Legal Strategy | MUNERA AL-FUHAID<br>Special Counsel<br>Texas Bar No. 24094501 |
| | AMY S. HILTON<br>Special Counsel<br>Texas Bar No. 24097834 |
| | ETHAN SZUMANSKI<br>Special Counsel<br>Texas Bar No. 24123966 |
| | Office of the Attorney General of Texas<br>Special Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>ryan.walters@oag.texas.gov<br>munera.al-fuhaid@oag.texas.gov<br>amy.hilton@oag.texas.gov<br>ethan.szumanski@oag.texas.gov |
| | **Counsel for the State of Texas** |

### CERTIFICATE OF SERVICE

I certify that on June 21, 2024, this document was filed through the Court's CM/ECF system, which served it upon all counsel of record.

/s/ Ryan D. Walters
RYAN D. WALTERS